The next matter number 25-1426 Citation Insurance Company v. Broan-NuTone LLC et al. At this time would counsel for the appellant please come to the podium and introduce himself on the record to begin. May it please the court Mark Utke from the law firm Kozen O'Connor I represent the appellant Citation Insurance Company and your honor I request two minutes rebuttal be reserved. Your honor in order to first and foremost and we're seeking a reversal of the district court's opinion which dismissed citations case on summary judgment based on the implied warranty of merchantability in the Commonwealth in order to prove a claim under the implied warranty of merchantability a litigant is required to show that there was a defect in the product that the defect existed at the time the product left the manufacturers hands and that that defect caused the plaintiff's injuries. Now the the the first element of the implied warranty of merchantability can be satisfied by a litigant in the Commonwealth by what is commonly known as the malfunction theory. Counsel I wonder just to help you focus your briefing left me uncertain as to exactly what you were challenging on appeal there were these exclusionary rulings made by the district court with respect to the expert testimony that you offer. The district court said in part in the absence of that expert testimony you really cannot make your products liability case. I could not find in your brief where you seem to be explicitly challenging those exclusionary rulings. At times you seem to be arguing that well okay we're not happy about that but we're not challenging that we think we still had enough evidence to survive summary judgment. Which are you challenging those exclusionary rulings or are you accepting them and saying well even in the absence of that expert testimony there was enough here to survive summary judgment? By way of background and first and foremost to answer your question I do not dispute those exclusionary rulings and and I'm I'm fine that the court made those rulings. They're in response to at my experts deposition defense counsel chose to ask him questions regarding feasible alternative designs and manufacturing defects that weren't contained in his reports. He answered those questions at deposition and now the court excluded those as they were not contained in his reports. I don't dispute that but I don't need that testimony to support my case which rests on the malfunction theory which is different and because the lower court made its ruling that because we could not identify a specific defect to support a manufacturing defect that we weren't unable to pursue a manufacturing defect claim not disputed. That's that's not my case. The design defect case because we were not able to prove an alternate reasonable design for the product we couldn't support that theory. Once again not disputed. Our theory comes under the malfunction theory which allows a litigant to proceed with the first leg of the applied warranty of merchantability claim which is the defect portion by showing through circumstantial evidence the existence of a defect and also by eliminating secondary causes and in this case we've done that. So I understood your argument to us to be that the district court made a legal error because it didn't it presumed that you couldn't prevail at all whereas you're saying you have a legal theory that allows you to prevail with the evidence that you had yes at the time. So the question I have for you is did you make that argument squarely to the district court that the Commonwealth recognizes something called the malfunction theory even though I understand from your briefs that phrase isn't used but you're saying the case law in the Commonwealth functionally adopts the theory and therefore you should have survived summary judgment even without you know the specific defect evidence that she wanted to see from you. Was that squarely made to the district court? It certainly was. In the briefing for the summary judgment motion we brought up the Collins case and cited several other cases including the Enric case that defined the malfunction theory as we as we call it to the court. It simply was ignored by the court note submit that it was error for the lower court not to recognize that the courts of the Commonwealth do recognize circumstantial evidence can be used to establish the existence of a defect and we've done that in this case by eliminating secondary sources and having an expert opinion that the most probable cause for the fire was a defect in the the fan motor contained within the housing. We also supported that with a cause and an expert who analyzed the burn patterns and was able to physically locate the area of origin for the fire as being with the ceiling of the fan and he relied upon statements made by the Burlington Fire Department. They were the first to arrive on the scene and they described the glowing fan. I read all of that in your brief which is very helpful. I'm just wondering I read the Collins case it's pretty short it does not use the phrase malfunction theory which you previewed for us it would not but I'm just wondering if you know being involved with these types of cases are there actually cases being tried in Commonwealth courts under this theory is that actually happening or is it just this one Collins case that you can cite to us you know that again has fairly limited analysis. I think the First Circuit has recognized the that the Collins case is a precedent that should be followed in the Santos case and that case is cited in our brief so it has been recognized by the by the First Circuit it's also been recognized by the MPI UA court and that's also cited in our brief and relied upon. I didn't mean to suggest that we wouldn't treat it as a precedent of course we would it's a decision by the Massachusetts Court of Appeals. I'm just wondering from your knowledge as a practical matter are these cases being tried under what you would call the malfunction theory in the Massachusetts courts? Your Honor I have not tried one and I do I do quite a bit of the product liability work that's not to say that it's a viable theory it's a more difficult way to prove a case however when it when a product is destroyed in the course of a fire the courts have recognized that you simply can't leave a litigant without relief that you have to provide them with a manner in which they can satisfy the burden of proof of establishing a prima facie case so they can get to a jury and I think one of the more notable examples is another decision by the same district court judge just three months prior to the issuance of this opinion that we're here today for where Judge Guzman recognized adopted the findings of Magistrate Hennessy and recognized that the malfunction theory reliance upon Collins and Enrick as well as the IUA decision was valid and that would get to a jury. Two questions in Collins there is a reference to the fact that the dryer was destroyed in Collins? That's the functional portions of the dryer so the the components that are located on the rear of the dryer were destroyed. I wasn't clear from your briefing that you were saying that was a requirement under the malfunction theory that it was enough to eliminate all the other causes even if the existing source of the problem still survived and simply wasn't evident from looking at it or telling it what the malfunction was that didn't matter you still could infer almost like a receptor type idea is that your position? No there's a difference between possibilities and probabilities if you can eliminate all probabilities and make a determination that the most probable cause for the fire was a malfunction in this. And even if the thing is not destroyed you still can bring the theory? Well in the. I'm just asking. Yes. Yes and is that necessary for us to think that theory is a viable theory under Massachusetts law for you to win? It is yes. Is there any case in which there's been a holding based on that theory where the product itself was not destroyed? We go to the first the Collins case. Collins the dryer was destroyed? Well the same thing in this case the the motor in the bathroom exhaust fan was functionally destroyed. So you had the same image where in Collins the electrical expert was able to opine that the brittleness of the remained so there were components that remained because they had been exposed to temperatures in excess of 2,000 degrees he could say that the malfunction of the motor was the cause for the fire. Same thing in this case we have remnants of the product it doesn't have to be obliterated or these are metal parts they don't completely destroy themselves but the functionality of the unit to reach an actual specification as to what the actual. Do we do we have I mean I can understand the case in which it's completely destroyed then if we start getting into the how much it's destroyed and how functional you could start to imagine maybe we need an expert for that which we don't have here. I'm just trying to figure out under Massachusetts law what kind of idea of mouth because as I understand it the states are not all on the same page is exactly what this malfunction theory is in practice and it's not well fleshed out we don't have any SJC decision fleshing it out. Collins is itself as Judge Rickman said is short and it also has facts that are at least in some respects different than this case because they refer to the dryers being completely destroyed. So I got I'm just trying to figure out what what what version of the malfunction theory we're supposed to be going on here. I would refer the court to the MPI UA decision which was a microwave oven that the working components the electronic circuit board were destroyed in the fire but the enough of the microwave it existed that they could look at the power cord and eliminate that as a secondary cause. So they were able to look at the control portion of the microwave and make that determination. What MPI use from what district that's it's an appellate court decision in Massachusetts. In mass and that was cited to the district court or was not here? Your Honor, I can't answer that question. I don't have a response to you on that. Very quick this isn't it's a factual matter this is not a case where the item at issue here that the motor if you will could not have was not susceptible to being investigated. Isn't that correct? It was still in a state where it could be investigated to determine perhaps a malfunction and its causal relation to the fire. I mean that is a factual matter that is the case is it not? It is not. In this case it was missing wire crimps and the motor leads. Those are the supply wires that supply power to the motor. So to perform an actual proper investigation of the motor without those parts would be incomplete and they were destroyed in the fire. Nobody found them. Do you have any expert testifying as to how the investigation could proceed given what was left? No. Other than my expert indicating the most probable cause for the fire was a malfunction of the the fan motor. He's very specific in his report. And does he make it clear that the fan motor could not be investigated? I don't think that was that's a necessary component of the proof. Well that's I guess that's the heart of Judge Lopez's question to you. Why is it not? Because the both the Collins and the MPIU court were faced with that same question and they... I thought Collins they were not because the dryer was totally destroyed. But could I be helpful maybe on this point because I'm not sure what qualifies as you know destruction within sort of the framework of these of the cases and the theory that you're talking about. But when I read Collins it actually says that two wires found inside the dryer after the fire were brittle. So the dryer may have been destroyed in the sense of it wasn't it wasn't operational. But it seems that it actually existed after the fire based on Collins's description including that they could find wires which you mentioned. But the actual physical dryer existed. So what do you understand about what destruction means under the malfunction theory? Destruction would mean that it's missing critical component parts. And in this case the wire leads that actually supply power to the motor were not there. They couldn't be examined. You couldn't tell whether they had been exposed to high temperatures of heat. The wire crimps were not there. So you couldn't tell whether the wire crimp was a manufacturing defect if it was improperly crimped. There are you know several scenarios where those missing pieces of evidence would be critical to an expert in the field of electricity such that they couldn't eliminate or include them. Is my understanding right that not every state adopts this malfunction theory and that the states divide as to exactly how to define it? Not every state not every state recognizes it but there are quite a few states that do. Majority? I would be guessing. Right and and then even among the ones that do there's divergent ways of describing it. I thought with precisely with respect to this issue about how much has to have survived kind of thing. Is that wrong? No I think they're consistent in the way they apply it which is consistent with the re-statement third. That they apply it the same way. It's just called they may not refer to it as the malfunction theory. They may refer to it as I have another name for it but form over substance is really not the critical component. They're allowing litigants to survive a summary judgment motion if they can show that by circumstantial evidence the most probable cause of the fire. Tell me what we're supposed to do as a federal court. Ultimately we're supposed to do what the SJC would do. We don't have an SJC decision. The issue is an issue that is in dispute among state courts. So what is the reason why we should conclude that the SJC would adopt this? Is there some SJC decision adopting it that I'm not aware of? I think the Santos decision which is a First Circuit decision specifically recognized Collins and NPI UA as good law in the Commonwealth of Massachusetts. That it had precedential value and there was nothing to state otherwise. And then one last question. In that experts report, I don't know if I'm going to be able to isolate the thing, but in the key passage that you cite where he's ruling out the other possible causes, there's this reference to other wiring at various points and I just find it confusing because I can't tell is he saying that we know that the problem came from the fan as opposed to wiring from the house that went directly to the fan? And if we know he's ruling out that wiring, where in that key paragraph are you getting that idea? Do you follow my question? I do and it's a great question because it's the difference between this fan unit being attacked by an advancing fire where you would expect all of the wires around the fan, that would be the supply wire going into it, you'd expect all the all the outer coating to be melted off of it. In this case it was still intact. So you have electrical activity within the box and signs of electrical activity that we know can't exist unless it's being supplied with electrical power. But as you read that paragraph he's saying that any wire going into the fan was not damaged and therefore none of those wires could be the problem? That's correct and that's the difference between the fan causing the fire or an advancing fire attacking the box. But that other wiring is not referring to wiring other than the wiring directly going to the fan? No that's the supply line to the fan and there were all of the other wiring in the area including the ceiling lights was examined in a laboratory. Thank you. Thank you, Your Honor. Would counsel for the appellees please introduce himself on the record to begin? Good afternoon. Chief Judge Barron, may it please the court, my name is Christopher Duggan and I'm here for Brown-Newton. Your Honors have put your fingers right on the central point and that is that Massachusetts has never adopted the theory that the plaintiff is asking them to do today. Product liability law changed dramatically in 1978 with Back versus Wicks and that is still the law that governs Massachusetts product liability today on both design defect and on manufacturing. Just to get our bearings, what do you make of Collins? Collins is a couple of things. One is it's extremely short because it's a it's a re-script opinion. Two is if you look at, if you parse through it as carefully as you can, you notice that it's unclear to me anyway what arguments were actually made by Sears in defending. I don't know, it doesn't look like Sears actually made any argument about how to establish a manufacturing defect. Typically under ULAW you have to prove that the product is different than every other product in that line, therefore that's what causes a manufacturing defect. And in fact, Your Honors, to follow up on your earlier question, Judge Lippis, this product and yours, Judge Barron, this product actually did survive and actually was examined at a lab exam and this expert, Mr. Wald, actually did come to a conclusion that the part of the wires, the lead wire, into the TCO, the thermal fuse, was bent too much and that was his manufacturing defect theory. However, he also admitted that, well, he didn't know if that was a cause of the fire or not or had anything to do with the fire. And therein is exactly the problem. If a jurisdiction like Massachusetts could now be, you know, adopt a malfunction theory, which essentially is vase epsa, in another word. Hey, here's a product, there's a fire around, I can't think of anything else that's going to cause it, therefore it must have been this. That's essentially what the manufacturing, the malfunction theory says. Massachusetts has never adopted that. Collins got to the point where they said everything else was destroyed. And I did note that in Citation's brief, in two different places, page 14 and page 22, he said that the whole reason and the only justification for even considering that theory was that all of the other evidence is destroyed and therefore he wouldn't be able to make a claim, or the plaintiff in any case wouldn't be able to make a claim, without it. Or I guess, maybe put it this way, Collins says, given the damage done to the dryer by the fire, greater specificity was probably not possible. And is your contention that's just not true here? Yes, absolutely. And two things. One is that Mr. Waldman says it in his report. There's no place in that report where he says it. And if he's going to be limited, as Judge Guzman pointed out, to what's in that report, that's it. So even Collins doesn't help them in this case. Counsel, and I may not understand the mechanics here at all, but let me just tell you what I'm hearing. There was an expert report saying that the wires coming in to the motor were intact, suggesting that there was no advancing fire that might have been the source of the larger blaze. That would suggest that perhaps some wiring internal to the motor was the source of the fire. But what I'm hearing is, those are the references to the wire board, that that was destroyed. And so there was no ability, from the plaintiff's point of view, of assessing whether some malfunction in that wire board might have caused the fire. And because that was destroyed, and that's the relevant destruction, because that was destroyed, they are entitled to an inference that that destroyed wire board, if you will, was the source of the fire. Is that a correct characterization of their argument? And if so, why doesn't it matter that what really matters for the analysis of the cause of the fire was destroyed? A couple things, Your Honor. To answer your first question, it's sort of right, but not always. There's no circuit board in this. There's no board in it. What I think Mr. Aiki was trying to describe to you, and better than Mr. Wall did, I think, is that there are two lead wires that come off of the branch wiring, and they go into the box. That box, by the way, survived. It's there and could be examined. And those lead wires go in, and they go into an electrical component. And in that electrical component, there's wiring nuts and then something called a pigtail, which then connects it further into the motor. The motor survived. It's called a C-frame motor, where you have this round motor, which is made out of, in this case, aluminum windings, which go around a bobbin that is a V1 plastic. It's going to melt at about, I don't know, 1600 degrees or something like that. But the point is, for your honor, no real inference, no fair inference, can be drawn by the fact that one of those lead wires may not have been present. And Mr. Wall doesn't say that. Why not? I mean, if I'm following you, the lead wire, if it's a problem, that's a problem for you, correct? I'm sorry. If the lead wire is a problem, that's a problem for you? If they had an expert testifying, it was the lead wire, that would be a problem for you? No? If you're talking about the wire inside the box. Yeah, right. I understand. Well, you know, we had that in the Liberty Mutual case that Judge Cabell. So when you were referring to the lead wire to Judge Lopez, are you saying that's a wire that you're responsible for or a wire that someone else is responsible for? I was doing a poor job here, Your Honor. I'm sorry. There's actually two aspects. One is the branch wiring that comes off of the wiring then goes into the box. The branch wiring is not something that the manufacturer is responsible for. Everything inside the box after the wiring has been done. So I take it what Judge Lopez was saying is aspects of the thing your client is responsible for were destroyed and other aspects of it were not destroyed. Is that right? Basically that's the situation? Yes. Okay, so then I guess the question is if some expert can rule out any cause of the fire external to the product your company owns, what does it matter if part of your company's product is destroyed and part of it is not for purposes of the malfunction theory? Because in the race of the idea, we know it's coming from your product. I can't tell you which part of your product it is, but I know it's got to come from you. That's, I think, the idea, right? It's exactly the idea. What's wrong with that? Well, a couple of things. One is that Massachusetts hasn't adopted the malfunction theory yet, and that comes out of, as Mr. Aiki just told you, Your Honor, restatement third. Massachusetts has never adopted the restatement third. It follows the restatement second under Bax v. Wicks, which does not adopt the malfunction theory. But why is Collins not enough? I mean, I think that's their main argument is that they may not have officially adopted restatement third in so many words, but that's what Collins essentially says. Why do you think Collins is not enough? Well, for a number of reasons, it is. The first is Collins, as a re-scripted opinion, as Your Honor pointed out, it's very short, and we don't know much about it. We do know that the Sears only is responsible, only given credit for making two arguments. That's all they say. And one is that the dryer had been moved from one place to another. And then the other one was that there was no specific defect pointed to by Mr. Splane, whoever the expert was. But there was no argument made. First of all, we don't even know whether that's a manufacturing defect case or a design defect case. We don't know if it's a breach of warranty based on either of those theories. It's not in the opinion. And so what Mr. Utke and Citation are asking this Court to do is to change Massachusetts law based upon a seven-paragraph re-script opinion in 1992, which was cited the next year in URIC, which applied the standard Bach v. Wicks test. And that is basically what Massachusetts has always gone through. And the reason it is is because it's the fair way to do it. Otherwise, you're allowing the plaintiffs basically to say, like the first case, the box fan case that we cite. The fan is taken out, put it up, it's brand new. Seven or eight hours later, there's a fire. The Supreme Court said that's not enough, the fact that it's just there. We don't know what caused that fire. There has to be evidence as to what caused the fire. The Santos case from our court that your opponent cited to us. Yes, Santos case is a little bit different. First of all, that's a hydro lift case. That's the one where the people were – may I finish, Your Honor? The nurses, I think, got hurt when the lift collapsed. And there was an expert who actually noticed a defect, came to a verification of a defect in the product. And that was why Santos came out as it was, not because it was just an accident. Massachusetts has been pretty clear that the mere happening of an accident or the mere happening of a fire is not enough to sustain a verdict for a plaintiff. Can I just ask you a follow-up about Collins? So it is short, but if the reasoning holds, we need to apply it, of course. It does seem that it says in the second paragraph that the plaintiffs brought a breach of a warranty of merchantability claim, which is the claim that citation is asserting here, as I understand it. But you can tell me if you disagree. And then it goes on and it says it seemed that the fire originated from the dryer, unclear how much the dryer was destroyed, but it still existed as a physical object and the wires were brittle and hard, et cetera. And then it concludes that it's reasonable to infer that the electrical system was in the same condition at the time of the fire as it was at the time of the sale. And then the language that Judge Barron quoted that given the damage done to the dryer, greater specificity was not possible. All of that does seem to map on to what your opposing counsel is arguing here. So what about that you think is not enough to map on and allow this case to proceed past summary judgment? A couple of things that you all have put your fingers on. First is that everything of significance was destroyed and that is not the case here. We know it was not the case here because Mr. Wald has it in his report that he did an examination. He was able to look at the motor coil. He was able to look at one of the three cramps. He was able to look at – and he never says in the report that the fact that the two lead wires were missing made it impossible for him to come to an opinion and defect. He does not say it in his report. I guess I can understand why you wouldn't have a malfunction theory for some of the reasons you gave. But I'm not totally grasping why if you were going to entertain it, it would make a difference whether the whole thing was destroyed or not. I just can't quite grasp it. piece of it which might be the source and we've already gotten rid of all the other things. What is the import of deciding between those two things if we're buying that one can draw an inference when it's all destroyed? Right. The significance is – and as I said, the citation has it twice in its brief that it comes out only when the product is all destroyed because they have no other way of proceeding. But they don't have any other way of proceeding when a critical part of it's destroyed either because it could always be the critical part and you won't learn anything. Or is the idea that, well, at least they have to go through the paces of proving it's not also in the thing that wasn't destroyed? But if they – whether they do or not, you're still on the hook. Do you see what I'm saying? Because that's the part I'm just not grasping. Under the theory, if it's totally destroyed, even though we don't know you did it for sure, we assume you did. Now, if it's partially destroyed, in the critical piece, we can never figure out whether that's it. So I assume we would presume that must have been it unless we can prove it's the other thing that wasn't destroyed. But if we prove that, you still lose. So why make them prove that? Well, hopefully we don't still lose, Your Honor. But on this – you know what I'm saying. I know what you're saying. So that's the part I don't understand why we would draw that line. Well, the reason is the line is BAC v. WICS and what is required under BAC v. WICS to make a product liability case in Massachusetts for either design or – That just seems inconsistent with Collins flat out. But then Collins comes up later. And accepting everything that citation has said, Collins has carved out one really narrow exception, only for the case when the product in its entirety essentially is destroyed, all the major parts at least. And that is not what's here. And that, by the way, I think is if you look at the cases from other jurisdictions as well, how other courts look at it. And does anybody have – do you have a thought about whether we should certify this question? I thought – I did think about that, Your Honor, on the way. Because this would render a major change to Massachusetts product liability law and have a big impact. I mean, the one thing that, you know, BAC says, for example, is that the legislature has made product liability law congruent in nearly all respects with 402A second. And if it's a legislative thing, citation is making a big ask of a federal court to change Massachusetts law to adopt restatement third, which several cases in Massachusetts have said they haven't – they won't adopt. Thank you. So certifying would be something to consider. Thank you. Thank you, Your Honor. And, Judge Lopez, we'll miss you. Thank you. At this time, would counsel for the appellant please reintroduce himself? He has a two-minute rebuttal. Mark Utke on behalf of the appellant citation insurance company. Just briefly, I wanted to make a couple of points and avail myself to any questions the panel may have. The NRIC court cited by – the NRIC decision decided by my adversary, the key difference there was the plaintiff proffered no expert testimony as to the most probable cause for the fire. So in that case, you had a product that destroyed itself. The court recognized that. And the court went further to say – in saying to Collins that instances where a product destroys itself, there exists an inference where they can proceed with a case under the implied warranty of merchantability. And any other questions from the court as to the appellant's case? Do you have a view about certification? Your Honor, I think certification would be helpful. From my standpoint, a reversal would be a more efficient way. But I do think there is some viability to certification. You'll take a certification over a loss. Excuse me? I said you'll take a certification over a loss. Absolutely. And does – how does – last question is how does your position square with Back v. Square, which isn't discussed in Collins as I – I don't know what the ordering is. Is it Back first and then Back? Right, Back is first. And I think the Collins decision, which is what we rely upon, and the progeny of cases beyond that, which adopt the rest. If the language from Back that was quoted to us is correct, which is it's making a point about a legislative choice to track restatement second, that takes precedent for us over whatever lower court in Massachusetts does. If Back had said straight out, you know, that's what we do, then it doesn't really matter what Collins says for purposes of our analysis. So how are we – why is Back not a problem for you? I think the development of the law outside of restatement second, so you have the case law interpreting Collins and beyond, has been pretty clear that a litigant can satisfy that first leg of the three – of a product defect with circumstantial evidence and the exclusion of secondary causes. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.